## Commonwealth v. Matthews

*Harold S. Irwin, Jr.*, Assistant District Attorney, for Commonwealth.

*J. Boyd Landis*, for defendant.

JACOBS, J., November 5, 1958.—Defendant, Archibald M. Matthews, was charged with speeding on the Pennsylvania Turnpike. The alleged offense occurred on April 26, 1957, and an information was filed before Freemont C. Henry, a justice of the peace in North Middleton Township, Cumberland County, Pa. Defendant was convicted by the justice of the peace and an appeal allowed. At the time of the hearing on the appeal before the writer of this opinion, defendant argued that he was not charged before the nearest available

magistrate. Counsel agreed to stipulate the facts and to list the matter for argument on the legal question thus raised.

The stipulated facts were substantially as follows: Defendant was traveling in an easterly direction on the Pennsylvania Turnpike, in Upper Mifflin Township, Cumberland County, where the alleged offense occurred. The arresting officer filed an information before Mr. Henry, in North Middleton Township, Cumberland County. Mr. Henry is the nearest justice of the peace to the Carlisle Interchange of the turnpike. There was no other interchange between the point of the alleged offense and the Carlisle Interchange, but there were several emergency exits. One of the said emergency exits was located at the Plainfield Service Station on the same side of the turnpike as defendant was traveling and on the date of the alleged offense there was a justice of the peace, namely, Mrs. Ann R. Pyle, available in West Pennsboro Township, Cumberland County, a few yards away from the emergency exit. It was stipulated that the office of Mrs. Pyle was closer to the emergency exit than that of Mr. Henry, before whom the prosecution was brought.

On the day of the alleged offense, section 1201 (a) of The Vehicle Code of May 1, 1929, P. L. 905, as last amended, 75 PS §731, provided that information charging violations upon the Pennsylvania Turnpike "shall be brought before the available magistrate within the county where the alleged violation occurred who is nearest to the first exit from that part of the turnpike or highway where the alleged violation occurred." This wording was supplied by the amendment of August 19, 1953, P. L. 1084, and was not affected by amendments passed by the legislature in 1957, which did not become effective until after the date of this alleged offense.

It is stipulated that both mentioned magistrates were available, and it can be agreed that they were both within Cumberland County. We are, therefore, faced squarely with the question as to whether or not this prosecution was brought before the magistrate who is nearest to the first exit from that part of the turnpike where the alleged violation occurred. Our problem is to determine the meaning of the word "exit." If, as contended by the Commonwealth, the word "exit" means only exits such as the general public may use, then Mr. Henry was the nearest available magistrate. If, on the other hand, exit includes exits to and from the turnpike which the general public cannot use but which may be used by the turnpike police and other authorized personnel, then the appeal must be sustained, because Mrs. Pyle would have been the nearest available magistrate.

There are two lower court decisions, so far as we have found, and no appellate court decisions which interpret the word "exit" used in this section of The Vehicle Code. In Commonwealth v. Jones, 1 D. & C. 2d 705 (1954), the Quarter Sessions Court of Somerset County, Judge Sheely, specially presiding, decided that the legislature used the word "exit" in a broad sense as designing the interchange and as including the entire system of roadways by which a motorist might leave the turnpike at that point. In that case it was admitted that the Somerset Interchange was the first exit on the turnpike from the point of the violation and the sole question to be decided was whether or not the justice of the peace was the nearest justice to the exit. In handing down the opinion, Judge Sheely said that it was obvious that the legislature in using the term "first exit" was referring to the first interchange at which the motorist could leave the turnpike. This he says is true because the turnpike rules do not permit

a motorist to leave the turnpike at any exit other than an interchange and because the prosecution could then be adjusted with a minimum of inconvenience to the motorist and without requiring him to drive many miles out of his way to the office of the magistrate who happened to be nearest to the point of violation.

The Quarter Sessions Court of Chester County in Commonwealth v. Jones, 7 Chester 72 (1955), held a defendant guilty who was charged with a speeding violation on the turnpike before a justice of the peace who was nearest to the first exit of any character from that part of the turnpike where the violation occurred. The first exit was an emergency exit which could be used only by maintenance personnel of the turnpike and State Police. The Chester County Court rejected defendant's contention that the legislature did not mean to include an exit of the kind used but intended only the public exits or interchanges. In supporting its finding, the court said that the language of the statute was plain and unambiguous and conveyed a clear meaning and held that there was no occasion for resort to rules of construction.

There is considerable merit to both of these decisions. It is difficult for us to say that one is right and the other is wrong because both seem based on sound legal principles. However, since both of these cases were handed down, the legislature itself has construed this section of the act. In the 1957 session of the legislature this section of the act was amended to provide that informations charging violations upon the turnpike "shall be brought before the available magistrate within the county where the alleged violation occurred who is nearest in either direction to the first exit or interchange or emergency exit from that part of the turnpike or highway where the alleged violation occurred."

It is a fundamental principle of statutory construction that a change of language in a statute indicates a change of legislative intent.

"Where words of a later statute differ from those of a previous one on the same subject, they presumably are intended to have a different construction": Fidelity Trust Company v. Kirk, 344 Pa. 455; Commonwealth v. Moon, 383 Pa. 18.

In our opinion the addition of the words "interchange" and "emergency exit" in the amendment of 1957 is most significant. It indicates that the legislature itself had construed this section of The Vehicle Code, which was in force at the time this alleged violation occurred, as using the word "exit" to refer only to an interchange, otherwise why would they have added the words "emergency exit." See Dixon's Case, 138 Pa. Superior Ct. 385, where a subsequent amendment was considered in construing a prior act.

In view of the conflict existing among our fellow courts, we feel that we would not be justified in holding that the word "exit" as used in the 1953 amendment is clear and free from all ambiguity. Therefore, we look to the intention of the legislature and are aided by the fact that the legislature itself amended the act and thus demonstrated that its intention in passing the Act of 1953 differed from its intention in passing the amendment of 1957, leaving us with the rather plain implication that the 1953 amendment did not intend to include emergency exits within the term "exit".

### Order

And now, November 5, 1958, at 9:30 a.m., on the basis of the facts submitted to the court by stipulation, the court concludes that the information charging defendant with speeding upon the Pennsylvania Turnpike was brought before the available magistrate within the county where the alleged violation occurred who

was nearest to the first exit from that part of the turnpike where the alleged violation occurred, and it is directed that defendant's appeal from summary conviction be listed for trial on the next day set by this court for the trial of summary convictions.